```
1   Robert M. Traylor, Esq. (SBN 204445)
    traylor@scmv.com
2   SELTZER CAPLAN McMAHON VITEK
3   A Law Corporation
    750 B Street, Suite 2100
4   San Diego, California 92101-8177
5   Telephone: (619) 685-3003
    Facsimile: (619) 685-3100
6
7   Attorney for Plaintiff
    FEDERAL INSURANCE COMPANY
8
```

FILED
CLERK, U.S. DISTRICT COURT
OCT 18 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                             DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, an Indiana corporation, | Case No. CV13-7730 CAS (MAN) |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| UNITED STATES JEWELRY LIQUIDATORS, INC., a Florida corporation; SPD GROUP, INC., a Florida corporation; and SANDRA BULLOCK, an individual, | |
| Defendants. | |

COMPLAINT FOR DECLARATORY RELIEF

Plaintiff FEDERAL INSURANCE COMPANY brings this action for declaratory relief against UNITED STATES JEWELRY LIQUIDATORS, INC., SPD GROUP, INC., and SANDRA BULLOCK, and states as follows.

## I. STATEMENT OF THE CASE

Through this action, Federal, an excess/umbrella insurer, seeks a declaration with regard to its rights, duties and obligations, if any, under certain of its insurance policies, and especially with regard to claims and issues pending in a JAMS arbitration proceeding through which the insureds and claimant are attempting to improperly manufacture a collusive judgment to be enforced against Federal. After an uncovered claim was filed, Federal's insureds materially breached their duties and obligations under the policy/ies, by entering into a settlement agreement and agreeing to binding judicial arbitration for new previously unasserted claims without Federal's knowledge or consent.

## II. NATURE OF THE ACTION

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 for a determination of the rights and obligations, if any, of the parties arising from excess and umbrella insurance policies issued by Plaintiff FEDERAL INSURANCE COMPANY ("Federal").

2. Federal seeks a declaratory judgment that it does not have any obligation to provide coverage for any claims, damages, or judgments in the underlying lawsuit captioned *Sandra Bullock v. Toywatch USA, et al.* and the JAMS Arbitration captioned as *Sandra Bullock v. United States Jewelry Liquidators et al.*, currently pending in the Judicial Arbitration and Mediation Services ("JAMS") Santa Monica Branch.

## III. PARTIES, JURISDICTION, AND VENUE

3. At all times material to this action, Federal is and was a corporation organized under the laws of the State of Indiana, with its principal place of business in Warren, New Jersey.

4.  At all times material to this action, Defendant UNITED STATES JEWELRY LIQUIDATORS, INC. ("USJL") is and was a corporation organized under the laws of the State of Florida, with its principal place of business in Lighthouse Point, Florida. USJL is a Defendant in the lawsuit captioned as *Sandra Bullock v. ToyWatch USA, et al.*, case number SC116135, in the Superior Court of the State of California for the County of Los Angeles (hereinafter the "Underlying Action"), which is currently stayed pending purportedly binding judicial arbitration. USJL is a Respondent in the arbitration captioned as *Sandra Bullock v. United States Jewelry Liquidators et al.*, Case Reference Number 1210030959, currently pending in the JAMS Santa Monica Branch (hereinafter the "JAMS Arbitration"), which must proceed to a merit hearing by December 18, 2013.

5.  At all times material to this action, Defendant SPD GROUP, INC. ("SPD") is and was a corporation organized under the laws of the State of Florida, with its principal place of business in Lighthouse Point, Florida. SPD also is a Defendant in the Underlying Action. SPD also is a Respondent in the JAMS Arbitration.

6.  Upon information and belief, at all times material to this action Defendant SANDRA BULLOCK, an individual, is and was a citizen of the State of Texas. Ms. Bullock is the Plaintiff in the Underlying Action. Ms. Bullock is the Claimant in the JAMS Arbitration. Ms. Bullock has obtained an agreement from the insureds to assign their rights under the policies to her and, Federal is informed and believes, will attempt to assert those rights, or other related claims, derivatively and/or directly against Federal.

7.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 and 1367 because at all material times there is and was complete diversity of citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, cost and attorney's fees. In particular, Ms. Bullock seeks in excess of $75,000 in the Underlying Action and JAMS Arbitration.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District, and especially in that the Underlying Action was filed and is currently pending in the Superior Court of the County of Los Angeles and the JAMS Arbitration was filed and is currently pending in the JAMS Santa Monica Branch office.

## IV.   GENERAL ALLEGATIONS

### A.   The Underlying Uncovered Lawsuit.

9.     The Underlying Action arises out of the use, on websites advertising the ToyWatch, of celebrity actor Sandra Bullock's name and a frame from the movie *The Blindside* showing her character wearing a ToyWatch. *The Blindside* is based on a true story about Michel Oher, a homeless teenager, and Leigh Anne and Sean Touhy, who took him into their home as part of their family. Leigh Anne Touhy wore a ToyWatch in real life. Ms. Bullock, who portrayed Mrs. Touhy in the movie, wore a ToyWatch in the movie.

10.     On March 1, 2012, Ms. Bullock filed the Underlying Action. On June 1, 2012, Ms. Bullock filed an amended complaint. A true and correct copy of the operative First Amended Complaint in the Underlying Action, which contains the same factual allegations as the initial complaint, is attached hereto as Exhibit "A".

11.     The operative factual allegations of the Underlying Action were that the defendants "used Ms. Bullock's name and image, without her permission, in advertising and marketing to sell watches" without her approval and without paying her "any compensation for such unauthorized use, let alone compensation commensurate with the substantial commercial value of the use of her name and image for such commercial purposes." (Ex. A, ¶ 1.) Ms. Bullock alleged that she did not give her permission for that use, and that use of her name and image constituted a "misappropriat[ion] of Plaintiff's valuable right of publicity and right of privacy and the associated success and popularity of Plaintiff . . . ." (*Id.* at ¶ 38.)

12. Ms. Bullock's initial complaint contained a single count for "Violation of California Common Law Right of Publicity/Right of Privacy."

13. Ms. Bullock's amended complaint contained the same factual allegations and first cause of action as the initial complaint, but added a second count for "Violation of Florida Common Law Right of Privacy Against J.R. Dunn only." The complaint defined "J.R. Dunn" as SPD. (SPD does business as "J.R. Dunn Jewelers.") Like the first count, the second count alleged that "J.R. Dunn, without Plaintiff's permission, used Plaintiff's name and photograph to advertise and promote J.R. Dunn and its products." (*Id.* at ¶ 45.)

14. On July 19, 2012, Ms. Bullock designated "DOE 2" in her amended complaint as USJL.

15. On January 10, 2013, Ms. Bullock's counsel made a settlement demand to the insurers of the various defendants asserting solely economic damages for the claims of misappropriation of name and likeness.

16. The claims of misappropriation of name and likeness asserted in the Underlying Action were excluded under the excess insurance policies issued by Federal because of intellectual property exclusions.

**B.  SPD and USJL Entered Into a Settlement Agreement, Assignment Agreement and Covenant Not to Execute With Ms. Bullock, Without Federal's Consent.**

17. Effective March 22, 2013, Ms. Bullock, on the one hand, and SPD, USJL, and two insurance carriers, on the other hand, entered into a "Confidential Settlement Agreement, Assignment Agreement, and Covenant Not to Execute." (That agreement contains a confidentiality provision and is therefore not attached hereto.) However, Ms. Bullock attached a redacted portion of the agreement to her initial demand for arbitration. (*See* Exhibit B described *infra.*) The portion of Paragraph 7.1 attached to the demand for arbitration provides as follows:

> 7.1  In consideration of the promises set forth herein, the Settling Defendants hereby stipulate and agree with respect to the Action that:

    a. Plaintiff's claims against SPD and USJL, <u>including those set forth in the Action</u>, shall be determined by binding judicial arbitration pursuant to California Code of Civil Procedure section 1141.12(a), with such arbitration to be conducted before Justice Steven J. Stone (Ret.) of JAMS (the "Arbitration Proceeding"), who shall have the power to award injunctive relief as well as damages and all other available remedies, and Plaintiff and the Settling Defendants hereby give up any rights that she or it may have or possess to have the claims and defenses between them litigated in a court or jury trial, other than the enforcement of the arbitration award(s) and/or entry of a judgment; and

    b. the Action in the Los Angeles County Superior Court shall be stayed pending the award by Justice Stone in the Arbitration Proceeding.

(Ex. B) (emphasis supplied).

 18. Federal was not informed of this agreement before its execution. Federal did not consent to SPD or USJL settling with Ms. Bullock or undertaking the above-described obligations.

 19. Upon information and belief, USJL and SPD obtained a release of any claims Ms. Bullock might have against them except for claims which would be arbitrated and ultimately enforced against Federal and another insurer.

## C. The JAMS Arbitration

 20. On May 13, 2013, Ms. Bullock filed a demand for arbitration against SPD and USJL, captioned as *Sandra Bullock v. United States Jewelry Liquidators et al.*, JAMS Case Reference Number 1210030959. The demand requested expedited procedures. A true and correct copy of the demand for arbitration is attached hereto as Exhibit "B."

 21. On May 13, 2013, the Los Angeles Superior Court, acting on the stipulation of the Defendants here, entered an order staying the Underlying Action until conclusion of the JAMS Arbitration.

 22. In the JAMS Arbitration, Ms. Bullock asserted new and additional claims which were not pleaded in the Underlying Action. Federal was not given notice that such additional claims would be filed. The additional claims were never tendered to

Federal before USJL and SPD voluntarily, and without Federal's knowledge or consent, obligated themselves to arbitrate Ms. Bullock's claims. Federal was never provided an opportunity to review the new claims for potential coverage before the execution of the settlement, assignment, and covenant not to execute. Federal is informed and believes that Ms. Bullock's assertion of additional claims constituted an attempt to plead into the coverage of the Federal policy.

23. On July 11, 2013, Ms. Bullock submitted a First Amended Statement of Claim in the JAMS Arbitration, a true and correct copy of which is attached hereto as Exhibit "C".

24. Ms. Bullock's First Amended Statement of Claim pleaded substantially the same factual allegations as were asserted in her Underlying Action. The first cause of action again asserted a claim for violation of the common law right of publicity, and again alleged that "Claimant has a valuable right of publicity, a right with substantial commercial value," and that "Respondents have misappropriated Claimant's name, photograph, image, identity and persona, and used them, without permission, for Respondents' advantage…." (Ex. C at ¶¶ 23-24.)

25. However, in the new second cause of action, in addition to alleging an infringement on the "right to control the use of her image, identity and persona," Ms. Bullock conclusorily alleged an infringement on "Claimant's right to be left alone," but did not assert any injury to feelings or emotions. (Ex. C at ¶ 29.) The statement of claim also asserted additional claims for common law infringement on trademark/trade name, trade dress, and slogan. Ms. Bullock contended that her name, image, and identity are "trade dress" and that her name is a "slogan." None of these claims were asserted in the initial lawsuit.

26. USJL thereafter sought a defense and indemnity from Federal against the claims made in the JAMS Arbitration. On August 8, 2013, by and through its coverage counsel, and as detailed in a lengthy coverage analysis, Federal denied any duty to

1  defend USJL for the arbitration proceeding.  Federal agreed, however, to provide a
2  defense under reservation of rights even though it had no obligation to do so.

### D. The Federal Excess and Umbrella Insurance Policies.

27. Federal issued consecutive Commercial Excess and Umbrella Insurance Policies, policy number 7986-66-94, for policy periods August 27, 2009 to August 27, 2010 (the "2009 Federal Policy"), August 27, 2010 to August 27, 2011 (the "2010 Federal Policy"), and August 27, 2011 to August 27, 2012 (the "2011 Federal Policy"). True and correct copies of the 2009, 2010, and 2011 Federal Policies are attached hereto as Exhibits "D", "E", and "F", respectively.  The 2009, 2010, and 2011 Federal Policies are collectively referred to herein as the "Federal Policies."

28. The first publication of Ms. Bullock's name and the frame from the movie occurred in early 2010.  Consequently, the applicable Federal policy is the 2009 Federal Policy.

29. The Federal Policies provide certain Excess Follow Form Coverage in excess of the Scheduled Underlying Insurance (Coverage A) and certain Umbrella Coverage (Coverage B).  The Umbrella Coverage (Coverage B) does not apply in the first instance because it only provides bodily injury and property damage liability coverage.  Ms. Bullock has asserted no allegations of **bodily injury** or **property damage** as those terms are defined.

30. The insuring agreement for Coverage A provides in pertinent part:

> Subject to all of the terms and conditions applicable to Excess Follow-Form Coverage A, we will pay, on behalf of the **insured**, that part of **loss** to which this coverage applies, which exceeds the applicable **underlying limits.**
>
> This coverage will follow the terms and conditions of **underlying insurance** described in the Schedule of Underlying Insurance, unless a term or condition contained in this coverage:
>
> - Differs from any term or condition contained in the applicable **underlying insurance**; or

- Is not contained in the applicable **underlying insurance**.

  With respect to such exceptions described above, the terms and conditions contained in Coverage A will apply, to the extent that such terms and conditions provide less coverage than the terms and conditions of the **applicable underlying insurance.**

(Exs. D, E, F, Form 07-02-0815 (Rev. 7-01) at p. 3.)

31. The Federal Policies also contain the following "Underlying Insurance Exclusions" provision with respect to Coverage A: "Notwithstanding anything to the contrary set forth in any other provision of this contract, this insurance does not apply to any liability or loss, cost or expense to which the terms and conditions of **underlying insurance** do not apply." (Exs. D, E, F, Form 07-02-0815 (Rev. 7-01) at p. 11.)

32. The 2011 Federal Policy excludes, in pertinent part, loss "arising out of, giving rise to or in any way related to any actual or alleged … infringement or violation … of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation." (Ex. F, Endorsement Form 07-02-1146 (Rev. 7-01) at p. 1.)

E.   **The SPD Underlying Primary Policies.**

33. Pertinent to coverage for SPD, the Schedule of Underlying Insurance in the Federal Policies lists a Commercial General Liability Policy issued by Maryland Casualty Company ("Maryland Casualty") to SPD, policy number PAS 37973980 (the "SPD Maryland Casualty Policy"). A true and correct copy of the SPD Maryland Casualty Policy is attached hereto as Exhibit "G." Federal is informed and believes that the coverage provided under the SPD Maryland Casualty Policy is the same for all policy periods.

34. The SPD Maryland Casualty Policy contains the following exclusion in an "Electronic Data Liability Amendment Endorsement," which provides in pertinent part:

This insurance does not apply to:

   a.   "Personal and advertising injury":

* * *

> (12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights;
>
> However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress, or slogan;

(Ex. G, Endorsement Form 9S2102 Ed. 6-01, at p. 2.)

### F. The USJL Underlying Primary Policies.

35. Pertinent to coverage for USJL, the Schedule of Underlying Insurance of the 2009 and 2010 Federal policies list a Commercial General Liability Policy issued by Markel International Insurance Company Limited ("Markel") to USJL, policy number N078055/161.

36. A true and correct copy of the Markel policy, with a stated policy period of August 3, 2007 to August 3, 2008 (the "USJL Markel Policy"), which was provided to Federal when it first began insuring the account under an Excess and Umbrella Policy is attached hereto as Exhibit "H."

37. The USJL Markel Policy contains the following exclusion in its MKL 01 Endorsement:

> **v) Advertising Injury/Intellectual Property Infringement Exclusion**
>
> Coverage under this policy does not apply to any claim, suit, cost or expense arising directly or indirectly out of one or more allegations of:
>
> 1) deceptive, false, fraudulent, misleading, unfair, unlawful, or untrue business act or practice with respect to advertising, and/or
>
> 2) copyright, patent or trademark infringement, and/or
>
> 3) misappropriation of trade secret and/or practice, piracy or other intellectual property

whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

(Ex. H, Endorsement Form MKL 01, May 2003 Edition, at p. 9.)

38. The USJL Markel Policy form contains the following additional exclusion:

This insurance does not apply to:

* * *

**l. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(Ex. H, Form CG 00 01 10 01, at p. 6.) The exception to the exclusion does not apply because Endorsement AJG CGLE 01 modifies the definition of "personal and advertising injury" by, *inter alia*, deleting "offense g. 'infringing upon another's copyright, trade dress or slogan in your 'advertisement'." (Ex. H, Endorsement Form AJG CGLE 01, at p. 1.)

39. The USJL Markel Policy additionally contains the following exclusion in its AJG CGLE 01 Endorsement, providing in pertinent part:

**ADDITIONAL EXCLUSION**

This insurance does not apply to:

"Personal and advertising injury" arising out of any actual or alleged

infringement, misappropriation and/or dilution of another's patent,

copyright, trademark or other proprietary mark in whatever manner….

(Ex. H, Endorsement Form AJG CGLE 01, at p. 1.)

40. USJL replaced the USJL Markel Policy with a policy issued by Northfield Insurance Company ("Northfield") on August 10, 2009. USJL did not inform Federal of

this change, and the Schedule of Underlying Insurance in the Federal policies continued to include the USJL Markel Policy.

41. The coverage provided by the USJL Northfield Policy is materially different from the coverage provided by the USJL Markel Policy. Therefore, under the terms of the Federal Policies, Federal's excess coverage follows form to the USJL Markel Policy for those periods in which the USJL Markel Policy was listed.

42. On June 15, 2012, Federal issued an endorsement amending the Schedule of Underlying Insurance in the 2011 Federal Policy to include the USJL Northfield Policy. (Ex. F, Endorsement Form 07-02-0922 (Rev. 7-01), at p. 1.) At the time of the endorsement, the Northfield policy in effect was a Commercial General Liability Policy issued to USJL, policy number WS120179, with a stated policy period of August 10, 2011 to August 10, 2012 (the "USJL Northfield Policy"). A true and correct copy of the USJL Northfield Policy is attached hereto as Exhibit "I".

43. The USJL Northfield Policy Combination Endorsement contains the following exclusion, which provides in pertinent part:

This insurance does not apply to:

\* \* \*

**i.** **Intellectual Property**

"Personal and advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal and advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation:

**(1)** Copyright;

**(2)** Patent;

**(3)** Trade dress;

**(4)** Trade name;

**(5)** Trademark;

**(6)** Trade secret; or

**(7)** Other intellectual property rights or laws.

(Ex. I, Endorsement Form S2623-CG (3/11), at p. 2.)

**G.     The Maryland Casualty Company Complaint for Declaratory Relief.**

44.     On or about July 26, 2013, Maryland Casualty filed a "Complaint for Declaratory Relief" in the Los Angeles County Superior Court, seeking, among other things, a declaration that it has no duty to defend, nor any duty to indemnify, against the claims asserted in the JAMS Arbitration.

## V.     DECLARATORY RELIEF ACTION

45.     Due to the assertion of entitlement to coverage, and the pendency of the collusive JAMS Arbitration, Federal seeks a judicial determination of its rights, duties, and obligations under the Federal Policies.

46.     There is a bona fide actual controversy between the parties, and a present practical need for a declaration of the rights, duties, and obligations under the Federal Policies. Federal, on the one hand, and SPD, USJL, and Ms. Bullock, on the other hand, individually and collectively, have an actual, present, adverse, and antagonistic interest in the subject matter of this action.

47.     An actual controversy therefore has arisen and presently exists between Federal and the Defendants because Federal contends the Policy/ies do not provide coverage for the claims stated against and/or by the Defendants in the Underlying Action and/or the JAMS Arbitration; conversely the Defendants contend, *inter alia*, Federal is obligated by the terms of the Policy to indemnify its insureds for any judgment entered on the claims asserted in the Underlying Action and/or the JAMS Arbitration.

48.     A declaratory judgment is necessary because Federal contends, and the Defendants deny, that the Policy does not provide any form of coverage for the claims asserted against USJL and SPD in the Underlying Action and/or the JAMS Arbitration.

49.     All parties necessary for this declaration are properly before this Court.

50.     All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

# COUNT I

## (Declaratory Relief: No coverage obligation to USJL or SPD; Settlement without Federal's consent and breach of conditions)

51. Federal realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52. To the extent that any of the new claims asserted in arbitration may fall within the coverage provisions of the underlying policies and are not excluded, there is no coverage for the new claims because the insuring agreement for Coverage A provides that "We have no obligation under this insurance with respect to any claim or suit settled without our consent," (Exs. D, E, F, Form 07-02-0815 (Rev. 7-01) at p. 3), and due to USJL and SPD's breaches of the following conditions in the Federal Policies:

| | |
|---|---|
| *Compliance By Insureds* | We have no duty to provide coverage under this policy unless you and any other involved **insured** have fully complied with all of the terms and conditions of the policy. |
| | * * * |
| *Duties in the Event of Occurrence, Offense, Claim Or Suit* | . . .<br>D. No **insured**s will, except at that **insured**'s own cost, make any payment, assume any obligation or incur any expense without our consent. |

(Exs. D, E, F, Form 07-02-0815 (Rev. 7-01) at pp. 19-20.)

53. SPD and USJL, without Federal's consent, entered into a settlement agreement, assignment of rights, and covenant not to execute. In this agreement they assumed the obligation to enter into binding arbitration with an arbitrator chosen by Ms. Bullock and have the claims decided by that arbitrator, without a right of jury trial, resolution in court, or an appeal. Furthermore, they settled with an agreement to assign their rights to Ms. Bullock and obtained a covenant not to execute. The settlement and obligations were not limited to the claims asserted in the Underlying Action, but included claims never before asserted by Ms. Bullock, with no notice to Federal of those claims.

54. The settlement without Federal's consent and violation of the conditions preclude coverage as a matter of law without a showing of prejudice to Federal. In any event, the agreements and assumptions of obligations are prejudicial as a matter of law.

55. Consequently, any judgment obtained pursuant to the settlement agreement, assignment agreement and covenant not to execute cannot be enforced against Federal.

## COUNT II

### (Declaratory Relief: No duty to indemnify USJL; Intellectual property exclusions)

56. Federal realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

57. The causes of action asserted in the JAMS Arbitration are excluded by the intellectual property exclusions of the underlying USJL Markel Policy set forth above in Paragraphs 38 through 40 with respect to the 2009 Federal Policy, the 2010 Federal Policy, and the 2011 Federal Policy for the period of August 27, 2011 through June 15, 2012.

58. The causes of action asserted in the JAMS Arbitration are excluded by the intellectual property exclusion in the 2011 Federal Policy set forth in Paragraph 32.

59. The causes of action asserted in the JAMS Arbitration are excluded by the intellectual property exclusion of the underlying USJL Northfield Policy set forth above in Paragraph 44 with respect to the 2011 Federal Policy for the period of June 15, 2012 through August 27, 2012.

60. Additionally, the offenses of common law infringement on trade mark, trade name, trade dress, and slogan do not fall within the insuring agreement of the USJL Markel Policy because they do not fall within the definition of "personal and advertising injury" in the USJL Markel Policy.

61. Additionally, the offenses of common law infringement on trade mark, trade name, trade dress and slogan do not fall within the insuring agreement of the USJL

Northfield Policy because they do not fall within the definition of "personal and advertising injury" in the USJL Northfield Policy.

62. Consequently, Federal has no duty to indemnify USJL under the Federal Policies for the claims asserted in the JAMS Arbitration.

## COUNT III

### (Declaratory Relief: No duty to indemnify SPD; Intellectual property exclusions)

63. Federal realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

64. The first, second, and third causes of action in the JAMS Arbitration are excluded by the intellectual property exclusion in the SPD Maryland Casualty Policy set forth above in Paragraph 34. Consequently, Federal has no duty to indemnify SPD under the Federal Policies for the first, second, and third causes of action in the JAMS Arbitration.

65. All causes of action asserted in the JAMS Arbitration are excluded by the intellectual property exclusion in the 2011 Federal Policy set forth in Paragraph 32. Consequently, Federal has no duty to indemnify SPD under the 2011 Federal Policy for any of the causes of action in the JAMS Arbitration.

## COUNT IV

### (Declaratory Relief: Disgorgement of profits and the costs of complying with injunctive relief)

66. Federal realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

67. The third and fourth causes of action in the JAMS Arbitration seek a preliminary and permanent injunction to prohibit SPD and USJL from any further use of Ms. Bullock's intellectual property.

68. The third, fourth, and fifth causes of action in the JAMS Arbitration seek an award of SPD and USJL's profits associated with SPD and USJL's alleged use of Ms. Bullock's intellectual property.

69. The costs of complying with any preliminary or permanent injunction and any disgorgement of profits awarded in the JAMS Arbitration are not damages insured by the Federal Policies.

70. Consequently, Federal has no duty to indemnify SPD or USJL under the Federal Policies for any costs of complying with any preliminary or permanent injunction and any disgorgement of profits awarded in the JAMS Arbitration.

## COUNT V

## (Declaratory Relief: Punitive or exemplary damages)

71. Federal realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

72. Each of the claims asserted in the JAMS Arbitration seeks to recover punitive and exemplary damages in an amount to be determined at trial.

73. The USJL Markel Policy contains the following exclusion in its MKL 01 Endorsement:

> **e) Punitive/Exemplary Damages Exclusion**
>
> This insurance does not apply to any claim of or indemnification for punitive or exemplary damages.
>
> If a claim or a "suit" shall have been brought against you for a claim within the coverage provided under this policy, seeking both compensatory and punitive or exemplary damages, then we shall afford a defense for such action. We shall not, however have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.
>
> If State law provides for statutory multiple damage awards, the company will pay only the amount of the award before the multiplier is applied.

(Ex. H, Endorsement Form MKL 01, May 2003 Edition, at p. 2.)

74. Additionally, punitive or exemplary damages are uninsurable under applicable law and as a matter of public policy.

75. Consequently, Federal has no duty under the Federal Policies to indemnify USJL or SPD for any award of punitive or exemplary damages in the JAMS Arbitration.

## COUNT VI

**(Declaratory Relief: No coverage under the 2010 and 2011 Federal Policies)**

76. Federal realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

77. The first publication of Ms. Bullock's name and the frame from the movie occurred prior to the policy periods of the 2010 and 2011 Federal Policies and before the policy periods of the scheduled underlying insurance in the 2010 and 2011 Federal Policies.

78. The USJL Markel Policy excludes "'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (Ex. H, Form CG 00 01 10 01, at p. 6.)

79. The USJL Northfield Policy excludes "'Personal and advertising injury' arising out of: (1) Oral or written publication, in any manner, of material whose first publication took place prior to the policy period; or (2) Infringement of copyright, 'title' or 'slogan' in your 'advertisement' whose first infringement in your 'advertisement' was committed prior to the policy period." (Ex. I, Endorsement Form S2623-CG (3/11), at p. 1.)

80. The SPD Maryland Casualty Policy excludes "'Personal and advertising injury' … [a]rising out of publication of material whose first publication took place before the beginning of the policy period." (Ex. G, Form 9S2001 Ed. 4-99, at p. 6.)

81. Consequently, Federal has no duty to indemnify USJL or SPD under the 2010 or 2011 Federal Policies for any damages awarded in the JAMS Arbitration and/or the Underlying Action.

## **PRAYER FOR RELIEF**

WHEREFORE, Federal prays for a declaratory judgment against the Defendants and each of them as follows:

1. On the First Cause of Action: That the Court declare that Federal has no coverage obligations for the claims asserted in the JAMS Arbitration and/or the Underlying Action due to USJL and SPD settling without Federal's consent, thus violating their duties under the Federal Policies, and thereafter breaching the conditions of the Federal Policies by entering into the settlement agreement, assignment of rights, and covenant not to execute without Federal's consent;

2. On the Second Cause of Action: That the Court declare that Federal has no duty to indemnify USJL under the Federal Policies for the claims asserted in the JAMS Arbitration and/or the Underlying Action due to the intellectual property exclusions and "personal and advertising injury" definitions of the underlying policies;

3. On the Third Cause of Action:

   a. That the Court declare that Federal has no duty to indemnify SPD under the Federal Policies for the first, second, and third causes of action asserted in the JAMS Arbitration and/or the Underlying Action due to intellectual property exclusions; and

   b. That the Court declare that Federal has no duty to indemnify SPD under the 2011 Federal Policy for any of the causes of action asserted in the JAMS Arbitration due to the 2011 Federal Policy intellectual property exclusion;

4. On the Fourth Cause of Action: That the Court declare that Federal has no duty to indemnify SPD or USJL under the Federal Policies for any costs of complying with any preliminary or permanent injunction or any disgorgement of profits awarded in the JAMS Arbitration and/or the Underlying Action;

5. On the Fifth Cause of Action: That the Court declare that Federal has no duty to indemnify SPD or USJL under the Federal Policies for any award of punitive or exemplary damages in the JAMS Arbitration and/or the Underlying Action;

6. On the Sixth Cause of Action: That the Court declare that Federal has no duty to indemnify USJL or SPD under the 2010 or 2011 Federal Policies for any damages that might be awarded in the JAMS Arbitration and/or the Underlying Action;

7. That Federal be awarded its costs and expenses incurred herein; and,

8. For such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated: October 18, 2013            SELTZER CAPLAN McMAHON VITEK
                                    A Law Corporation


                                    By:  /s/ *Robert M. Traylor*
                                         Robert M. Traylor, Esq.
                                    Attorneys for Defendant FEDERAL
                                    INSURANCE COMPANY